# Fuller *v.* Mulhollan, Appellant.

*Contract—Sale—Sale of coal—Failure of title—Damages—Mines and mining.*

Where a certain acreage of coal is sold, and it turns out that a portion of the coal had been previously mined, the measure of the vendee's damages is the proportion which the coal mined out bears to that which remains in the land with reference to the consideration agreed to be paid; but either party may show peculiar advantages and disadvantages of the part for which the title failed, but this does not permit evidence of the value of the bargain. If, however, the vendor has been guilty of fraud, damages may be allowed in addition for all the expenses to which the plaintiff has been subjected by the fraud.

Argued May 4, 1909. Appeal, No. 34, April T., 1909, by defendant, from judgment of C. P. Jefferson Co., Nov. T.,

1907, No. 76, on verdict for plaintiff in case of G. W. Fuller v. Ed Mulhollan. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on a promissory note. Before REED, P. J.

At the trial it appeared that the note was given in partial payment of certain coal lands sold by the plaintiff to the defendant. The defendant alleged that he proceeded to work the mines and found that a portion of the coal had been previously mined out by the Standard Coal Company.

The defendant presented this point:

1. If the jury believe from the evidence that at the time the contract was signed, the plaintiff, Fuller, stated that no coal had been taken out of the premises described in the article of agreement, except what had been taken out by Womeldurf, and they further find that said statement was not true, but that a portion of said coal had been taken out, and that said statement was the inducing cause of the signing of said contract by Mulhollan and the note in suit, and that he would not have signed it without said statement, then the defendant is entitled to recoup or set off against the plaintiff's claim in this case, the value of the coal in place that had been removed at that time, other than that taken out by Womeldurf, and if it exceeds the amount of the note in suit, the defendant is entitled to a certificate in his favor for such excess. *Answer:* We add, "the damages which he has sustained by reason of these representations made by the plaintiff to him which subsequently turned out to be untrue;" and to that extent we affirm this point. The point itself states the measure of damages to be "the value of the coal in place which had been removed at that time," other than that taken out by Womeldurf, "and if it exceeds the amount of the note in suit, the defendant is entitled to a certificate in his favor for such excess." The contention of the defendant in this respect is that if there were 89–100 of an acre of coal taken out, and it appears from the testimony offered here on the part of the defendant that an acre containing a vein of coal of the heighth of the vein that is testified to here would contain about 8,066 tons, or that the

89–100 acres which it is alleged was mined out by the Standard
Coal Company contained 6,500 tons, or that there was prob-
ably taken out 6,000 tons.  This estimate seems to be based on
the supposition that the excavations made by the Standard
Coal Company contained solid coal—that it was all coal that
was taken out; and you will bear in mind the testimony of
some witnesses called here by the plaintiff, who testified that
there were clay veins in at least some of this coal and that
about only one-third of it was coal, and as to what part of the
coal that related to.  Then the defendant further contends
that that coal in place was worth from twenty to twenty-five
cents per ton, which would amount to from $1,200 to $1,500,
and that if you are satisfied that this quantity of coal was
taken out and that this was a fair price for it, their damages
would be from $1,200 to $1,500.  I am unable to agree with the
defendant as to the measure of damages in this case.  I do not
think that would be an accurate measure or standard for
measuring the damages in this case.  But I instruct you that the
standard of measurement in this case would be the relative
value which the part taken away, or that part taken away,
by the Standard Coal Company would bear to the total quan-
tity of coal in the land.  The testimony here—and it seems to
be undisputed—is that there was 5 23–100 acres of coal within
the limits of the lease as contended for by the defendant; that
1 41–100 of an acre had been taken out by Womeldurf; and
that 89–100 of an acre was taken out by the Standard Coal
Company.  If there were originally 5 23–100 acres, and 1 41–100
acres of that had been taken out by Womeldurf, that left
3 4–5 acres of coal remaining, for which the defendant paid,
according to the price agreed upon between him and the plain-
tiff, $1,500.  Now if there was 89–100 of an acre of that coal
taken away by the Standard Coal Company, then the measure
of the defendant's damages would be whatever that portion,
89–100 of an acre, would bear to the 3 4–5 acres which it is
contended was sold to the plaintiff by the defendant.  But in
the consideration of this question either party would have the
right—and if such testimony has been introduced here it would
be your duty to consider it—of recovery for the peculiar ad-

vantages or disadvantages of the part lost with reference to the whole quantity sold. You will understand that what is meant, gentlemen, by that is this: That where a man buys, say 3 4-5 acres of coal and discovers after he has put in his operations that he only had 2 4-5 acres, or that he got an acre less than he ought to have gotten according to the statements that were made, that the loss of that acre might be considerably more than its proportion to the remaining acreage; because a man sometimes would pay considerably more in proportion for the larger acreage than he would for the smaller acreage. And therefore you may take into consideration the peculiar advantages or disadvantages to the defendant by reason of the loss of a part of his purchase, in addition to the proportion which it would bear to the whole according to the price agreed upon between the parties. [1]

Verdict and judgment for plaintiff for $166.70. Defendant appealed.

*Error assigned* among others was (1) above instruction, quoting it.

*A. L. Cole,* with him *Carmalt & Strong,* for appellant, cited: Hunt v. Gilmore, 59 Pa. 450; Plunkett v. Sauer, 101 Pa. 356; Watson v. City of Philadelphia, 142 Pa. 179; Groetzinger v. Latimer, 146 Pa. 628; Kensington Electric Co. v. City of Philadelphia, 187 Pa. 446; Snyder v. Rainey, 198 Pa. 356.

*M. M. Davis,* with him *C. Z. Gordon,* for appellee, cited: Beaupland v. McKeen, 28 Pa. 124; Dumars v. Miller, 34 Pa. 319; McNair v. Compton, 35 Pa. 23.

OPINION BY HENDERSON, J., July 14, 1909:

The only question presented on the argument was that relating to the rule for the measure of damages stated by the court to the jury. The instruction on that point was in substance that the proportion which the coal mined by the Standard Coal Company bore to that which remained in the land would be the basis for ascertaining the damage and that this

should be fixed with reference to the consideration agreed to be paid. This instruction was in harmony with numerous cases and was well applied in this instance: Lee v. Dean, 3 Whart. 316; Beaupland v. McKeen et al., 28 Pa. 124; McNair v. Compton, 35 Pa. 23; Terry v. Drabenstadt, 68 Pa. 400; Tyson v. Eyrick, 141 Pa. 296; Morris v. Phelps, 5 Johns. 49. The relative value which the part taken away bears to the whole determines the extent of the plaintiff's injury and this is to be estimated with regard to the price fixed by the parties for the whole. It is, of course, competent to prove that the part to which the title has failed was of greater or less value than the part actually conveyed, and the correct measure of damages is the value of the part taken in proportion to the value of the part which the vendee gets, the computation being on the basis of the purchase money. Under this rule either party may show peculiar advantages or disadvantages of the part for which the title failed, but this does not permit evidence of the value of the bargain. In the absence of fraud the consideration fixed by the parties limits the amount of recovery whether the contract be executed or executory: Hertzog v. Hertzog, 34 Pa. 418; Bowser v. Cessna, 62 Pa. 148; Burk v. Serrill, 80 Pa. 413; Tyson v. Eyrick, 141 Pa. 296. Where the vendor is guilty of fraud in the conveyance damages may be allowed in addition for all the expenses to which the plaintiff has been subjected by the fraud: McNair v. Compton, 35 Pa. 23. The appellant's allegation is that a fraud was perpetrated on him and that he is entitled to damages amounting to the value of his bargain. He does not offer to rescind the contract, but seeks to charge the plaintiff with what he alleges to be the actual value of the coal removed by the Standard company. This he estimates to be from $1,200 to $1,500. The latter amount is what the plaintiff agreed to pay for the whole body of coal, to about five acres of which the plaintiff has a good title. As the amount lost was less than one acre the effect of a verdict according to the appellant's contention would be to give the plaintiff about four-fifths of the coal for nothing; a result which shows the unreasonableness of such a basis for the measurement of damages. If the defendant had shown that the part taken had peculiar advantages or that he

had incurred expense and made investments on the belief that the coal was in place the court would have admitted such evidence to be considered by the jury, but as the case was presented the jury was correctly instructed.

The judgment is affirmed.